# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

SHAREEN WOOD-SEBALD,

      Plaintiff,

*v*.                             CASE NO. 08-CV-11722

COMMISSIONER OF           DISTRICT JUDGE ANNA DIGGS TAYLOR
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

      Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

II.   **REPORT**

    A.   **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits.  This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 11,16.)

Plaintiff was 44 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 5 at 18, 49.)  Plaintiff's relevant employment history includes work as a telephone operator and a sales clerk.  (Tr. at 56.)  Plaintiff last worked in 1999.  (*Id.*)

Plaintiff filed the instant claim on August 26, 2003, alleging that she became unable to work on April 6, 2002.  (Tr. at 49.)  The claim was denied at the initial administrative stages.  (Tr. at 24.) In denying Plaintiff's claims, the Defendant Commissioner considered anxiety related disorders, muscular dystrophies and other myopathies as possible bases of disability.  (*Id.*)

On June 14, 2006, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") David R. Mazzi, who considered the instant application for benefits *de novo*.  In a decision dated January 9, 2007, the ALJ found that Plaintiff was not disabled as she could return to her prior work as a telephone operator.  (Tr. at 15-23.)  Plaintiff requested a review of this decision on February 7, 2007.  (Tr. at 11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 22, 2008, when, after the review

of additional exhibits[2] (Tr. at 284-85), the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.)  On April 23, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).   The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,*

486 F.3d at 241.  *See also Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).  *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.      Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was assaulted on April 6, 2002, at work.  (Tr. at 102.)  According to a CT scan, Plaintiff suffered an "orbital blowout fracture on the right, which is minimally displaced."  (*Id.*)  A complete lumbar spine examination performed in September 2002 was normal and showed "no fracture or subluxation [misalignment]."  (Tr. at 101.)

Plaintiff sought treatment with Gavin Awerbuch, M.D.  (Tr. at 246, 249-82.)  Dr. Awerbuch provided Botox injections for her migraine headaches and other pain medications.  (Tr. at 249-51.)  Optic nerve dysfunction and carotid stenosis were ruled out.  (Tr. at 252-54.)  Dr. Awerbuch referred Plaintiff to physical therapy for neck and hand pain beginning in May 2003 until Plaintiff was discharged in October 2003 because Plaintiff "partially achieved her therapy goals."  (Tr. at 104, 109-40.)  Dr. Awerbuch also referred Plaintiff to Thomas Beird, M.D., for treatment of carpal tunnel syndrome.  (Tr. at 244-45, 247.)  Plaintiff underwent carpal tunnel release surgery to her right hand in February 2004.  (Tr. at 225-31.)

Plaintiff was also treated by and underwent psychotherapy with Kaushik J. Raval, M.D., along with other doctors and counselors at the Delta Family Clinic for post-traumatic stress disorder ("PTSD") and depression.  (Tr. at 142-79.)  The primary stresses noted were related to Plaintiff's family and finances.  (Tr. at 143-49, 154-55.)  In September 2002, Drs. Olsen and Williams, PhD.s, administered a series of psychological tests.  They found that Plaintiff performed in the average range of intelligence and that the tests were "likely to be an underestimate of her abilities due to the lack of sleep."  (Tr. at 167.)  They concluded that Plaintiff has PTSD and dementia due to head trauma on Axis I, the after effects of mild closed head injury and trauma related stress.  They assessed a GAF score of 60.  (Tr. at 168.)  Rehabilitation services were

7

recommended to assist with her memory deficits as well as individual treatment of her PTSD. (*Id.*) It was also noted that "[h]er present employer should implement security procedures to prevent any further physical attacks which would create additional neurological and visual damage." (*Id.*) While being treated at the clinic, Plaintiff exhibited some memory deficits but was neat and clean in appearance, behaved appropriately, possessed stable motor skills, her conversations were rational, her thought content was normal, her orientation was good, and her intellect was adequate. (Tr. at 177.)

In February 2004, Plaintiff underwent a psychological evaluation by Mark Zaroff, Ph.D, performed at the request of Disability Determination Services.  Plaintiff stated that she enjoyed walking daily.  (Tr. at 182.)  She reported that she would often get together with friends and go to parties, and that she enjoyed sewing.  (*Id.*)  The doctor reported that Plaintiff appeared in good contact with reality.  (*Id.*)  Plaintiff was described as spontaneous, her thoughts were organized ad logical, and she was found to be goal-directed.  (Tr. at 183.)  Her speech was not pressured.  (*Id.*)  Dr. Zaroff diagnosed Plaintiff with PTSD, a self-report of fibromyalgia, bilateral carpal tunnel syndrome and regular neck and shoulder pain.  (Tr. at 185.)

Plaintiff was also examined at the request of Disability Determination Service by Siva Sankaran, M.D., who concluded:

> It does appear that this patient apparently had been assaulted twice in the past, once in 1999 causing a closed head injury causing migraine headache subsequently, and also in April, 2002, she was assaulted with a fracture of the orbital bone, as well as the nasal bone, causing problems.  Also, she had a cataract in the right eye, and she is being evaluated for surgery soon.  Patient's main problem appears to be psychiatric rather than physical because of the posttraumatic stress syndrome for which is [sic] being treated by a psychiatrist and psychologist.  Patient at present appears to be stable on her medication.  Patient also has bilateral carpal tunnel syndrome clinically for which she is going to have surgery.

(Tr. at 189.)  During this examination, the doctor also noted that the cranial nerves were normal, as were reflexes and motor responses.  (*Id.*)  Plaintiff was able to squat and touch her toes, and her legs appeared normal.  (*Id.*)  Grip strength was somewhat reduced in the right hand and orthopedic signs consistent with carpal tunnel syndrome were seen.  (*Id.*)  However, the doctor reported that Plaintiff could open a jar, button her clothing, write legibly, pick up a coin and tie her shoelaces with either hand.  (*Id.*)

A Mental Residual Functional Capacity ("RFC") Assessment conducted by Dr. Liu concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions and to maintain attention and concentration for extended periods, as well as the ability to complete a normal work week without interruption or to perform at a consistent pace without an unreasonable number and length of rest periods, but was not significantly limited in any other areas of understanding and memory or sustained concentration and persistence.  (Tr. at 195-96.) Plaintiff was also found to be moderately limited in her ability to interact appropriately with the general public but was otherwise not significantly limited in social interaction abilities.  (Tr. at 196.)  Plaintiff's abilities to respond appropriately to changes in the work setting and set realistic goals independently of others was found to be moderately limited but her abilities to be aware of normal hazards and take appropriate precautions and the ability to travel in unfamiliar places or use public transportation were not found to be significantly limited.  (Tr. at 196.)  Although it was noted that Plaintiff has a "fear of being hurt by others" and "would struggle with stress of change to work setting," the examiner also stated that she can do "simple tasks in a work setting."  (Tr. at 197.)

A Physical RFC Assessment concluded that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6

hours in an 8-hour workday, and is not limited in the ability to push or pull.  (Tr. at 233.)  No postural, manipulative, visual, communicative, or environmental limitations were found.  (Tr. at 234-36.)  The examiner also found "no indications . . . for fibromyalgia" and concluded that Plaintiff's "statements are not fully consistent with med info."  (*Id.*)

Plaintiff testified at the administrative hearing that she is working "back at the company I was working for last year." (Tr. at 291.)  She further testified that she is working "sometimes three days, four days a week" and is receiving a "$1,200 paycheck [for] two weeks" of work and has been doing so for the past month prior to the hearing.  (Tr. at 292.)  Plaintiff's job is "basically taking care of, making sure people are safe in their homes, but they're mostly in bed and [she] stay[s] in their room . . . [she has] never lifted anybody, they are independent or they have walkers." (Tr. at 293.)  She indicated that she has been allowed to "lay on the floor and stretch" when she needs to and she has requested to be placed with "one person because [she] find[s] [with] too much activity, [she] can't concentrate."  (Tr. at 297, 299.)  In the year prior to the hearing, Plaintiff also worked for three months. (Tr. at 292-93.)

The ALJ asked the vocational expert ("VE") to consider a hypothetical person with "an ability to perform no more than light work, but with additional restrictions that would preclude any forceful gripping with either hand or repetitive gripping, I guess, or grasping and gripping with either hand, and a limitation to simple, repetitive tasks because of concentration difficulties." (Tr. at 302.)  The VE testified that such a person could still perform the job of telephone operator.  (Tr. at 303.)  The ALJ if additional restrictions of a sedentary functional capacity and the need for a sit/stand option around every 30 minutes would eliminate that position and the VE responded that it would not.  (Tr. at 303.)  The addition of restrictions to only occasional fine or gross manipulation also would not affect a person's ability to perform the job of telephone operator. (Tr.

at 303.)  The VE also noted that other sedentary unskilled jobs that could be performed by the
hypothetical person would include video surveillance monitor, order checker and information
clerk.  (Tr. at 304.)  If deficiencies in concentration, persistence and pace added up to one-third of
the time, the VE testified that employment would be precluded.  (Tr. at 304-05.)

###    E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and
found at step one that Plaintiff had not engaged in substantial gainful activity since April 6, 2002.
(Tr. at 20.)  At step two, the ALJ found that Plaintiff's bilateral carpal tunnel syndrome, status post
bilateral carpal tunnel release surgery, fibromyalgia and post-traumatic stress disorder were
"severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no
evidence that Plaintiff's combination of impairments met or equaled one of the listings in the
regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff has the residual functional capacity
to perform her past relevant work as a telephone operator.  (Tr. at 22.)  Thus, the ALJ found
Plaintiff was not disabled.  (Tr. at 23.)

###    F.    Analysis and Conclusions

###    1.    Return to Prior Work

As noted, the ALJ concluded that Plaintiff had the ability to return to her prior work.  (Tr.
at 21-22.)  This finding ended the ALJ's disability inquiry because Plaintiff could not make out
a prima facie showing of disability.

The Commissioner's regulations state that the agency "will first compare our assessment
of your residual functional capacity with the physical and mental demands of your past relevant
work."  20 C.F.R. § 416.960(b).  "If you can still do this kind of work, we will find that you are
not disabled."  20 C.F.R. § 404.1520(f).  "'By referring to the claimant's ability to perform a

11

"kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 238 F.3d 419, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the Dictionary of Occupational Titles ("DOT").[3] *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ failed to properly evaluate the medical records and thus formed an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Dkt. 11 at 6-13.) Specifically, Plaintiff complains that the hypothetical assumed a person limited to simple,

---

[3]I note that the DOT is available on Westlaw (database identifier:  DICOT).

repetitive tasks, but that this was insufficient to account for Plaintiff's "moderate" limitations in the area of concentration, persistence or pace.  (Dkt. 11 at 9-10.)  Plaintiff cites cases where "[c]ourts have specifically found individuals that 'often,' which is equivalent to 'moderate,' suffer deficiencies of concentration to be disabled." (Dkt. 11 at 10.)   Plaintiff cites *Bankston v. Commissioner of Social Security*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), wherein the court stated that "a reasonable interpretation of 20 C.F.R. § 404.1520a indicates that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."  (Dkt. 11 at 10, 12.) Plaintiff further relies on the *Bankston* statement in arguing that the ALJ's hypothetical also failed to adequately portray Dr. Liu's opinion that Plaintiff is "moderately limited" in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and "moderate" "difficulties in maintaining social functioning." (Dkt. 11 at 16-17; Tr. at 196.)

I suggest that the statement cited does not fully support Plaintiff's argument.  The *Bankston* statement that a mental deficiency that occurs "often" "may not be consistent with" the ability to work is not a conclusive statement and certainly does not equate all "often occurring" mental limitations with disability.  Therefore, I suggest that *Bankston* simply recognizes that some often occurring mental impairments may render a person disabled but does not require a finding of disability and is not directly probative here.

I find *Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008), instructive.  In *Infantado,* the treating psychiatrist had noted "moderate" limitations in the "plaintiff's ability to understand, remember, and carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; and in her ability to set realistic goals and make plans

independently of others." *Id.* "Yet, despite these limitations, [the psychiatrist] noted that plaintiff 'does [light] household chores, is involved with her child's activities, e.g., builds models, and is interested in gardening, fishing.'" *Id.* Thus, the psychiatrist "concluded that plaintiff 'appears to be capable of performing simple tasks on a sustained basis.'" *Id.* The court noted that the "ALJ was not oblivious to the mental RFC assessment report, but expressly noted [the psychiatrist's] limitations in his decision. *Id.* The court further noted that the hypothetical posed to the VE "could have been more complete" by expressly referring to these limitations, but did not find that the hypothetical "inaccurately portrayed the plaintiff's substantial limitations." *Id.* Accordingly, the court concluded that the ALJ's conclusion that the plaintiff retains the ability to perform unskilled sedentary work "were not inconsistent with [the psychiatrist's] opinion regarding plaintiff's functional limitations and is supported by substantial evidence." *Id.*

I suggest that the same is true in the instant case. Here, the ALJ expressly incorporated a "limitation to simple, repetitive tasks because of concentration difficulties" into the hypothetical presented to the VE. (Tr. at 302.) The VE testified that such a person could still perform the job of telephone operator. (Tr. at 303.) If deficiencies in concentration, persistence and pace added up to one-third of the time, the VE testified that employment would be precluded. (Tr. at 304-05.) As argued by Plaintiff, Dr. Liu, her treating psychiatrist, found Plaintiff has "moderately limited functioning in the area of concentration, persistence and pace." (Tr. at 196.) However, Dr. Liu also opined that Plaintiff is able to perform "simple tasks in a work setting." (Tr. at 197.)

I find further support in Dr. Raval's observations that Plaintiff exhibited some memory deficits but was neat and clean in appearance, behaved appropriately, possessed stable motor skills, had rational conversations, nomal thought content, good orientation, and adequate intellect. (Tr. at 177.) In addition, Plaintiff's own description of her abilities to make "easy to fix meals,"

14

provide for her own personal care and hygiene, do her own laundry, clean up "a bit," pay her own bills, shop for household and personal items, take care of pets, drive, read, as well as her ability to have worked for three months in the year prior to the hearing and to have started and maintained full-time employment as a home care worker in the month prior to the hearing provides additional support to the accuracy of the hypothetical posed and the ALJ's decision. (Tr. at 72-78, 291-99.)

I therefore suggest that, as in *Infantado*, although the words "moderate limitations in concentration, persistence and pace" were not expressly mentioned, the ALJ was not oblivious to those limitations in crafting the hypothetical posed to the VE and that the hypothetical accurately portrayed Plaintiff's own psychiatrist's opinion that Plaintiff could perform simple tasks in a work setting. (Tr. at 197.)  As a result, I suggest that the ALJ's hypothetical and ultimate finding is supported by substantial evidence.  *See Sohm v. Astrue*, No. 3:07CV257-J, 2008 WL 2437541, at *3 (W.D. Ky. June 13, 2008) (hypothetical supported by substantial evidence where moderate limitation in abilities to maintain concentration, persistence and pace were not expressly mentioned but where, "[i]nstead of enumerating particular ways in which the limitations might affect [plaintiff], the ALJ simply assumed the inability to perform in certain ways . . . [such as] assum[ing] that [plaintiff] could do only 'simple, repetitive work.'")[4]

---

[4]I further note that moderate limitations in the ability to concentrate and limitations to simple tasks have been considered, without analysis, as coterminous, and have not been found to invalidate hypothetical questions presented during administrative hearings. *Middleton v. Astrue*, No. 07-387-GWU, 2008 WL 3914925, at *2 (E.D. Ky. Aug. 20, 2008)(hypothetical presumed claimant "limited to simple tasks with moderate limitations in carrying out detailed instructions, maintaining extended attention and concentration"); *Branham v. Astrue*, No. 07-158-GWU, 2008 WL 2325197, at *4 (E.D. Ky. June 4, 2008)(moderately limited ability to carry out detailed instructions, maintain attention, and concentration for extended time periods consistent with limited ability to do simple tasks in hypothetical); *Bowling v. Astrue*, No. 6:07-309-DCR, 2008 WL 1868023, at *7 (E.D. Ky. Apr. 24, 2008)(moderate versus marked limitations in ability to maintain attention and concentration for extended periods consistent with ability to carry out simple tasks in hypothetical).

I further suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ *Charles E Binder*

CHARLES E. BINDER
United States Magistrate Judge

Dated: January 20, 2009

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Mikel E. Lupisella, Susan K. DeClercq, and the Commissioner of Social Security, and served on District Judge Taylor in the traditional manner.

Date:  January 20, 2009          By    s/Patricia T. Morris
                                          Law Clerk to Magistrate Judge Binder